**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| TRUESIGHT COMMUNICATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>XIAOMI CORPORATION, XIAOMI H.K. LTD., XIAOMI COMMUNICATIONS CO., LTD., XIAOMI INC., XIAOMI TECHNOLOGY NETHERLANDS B.V., AND XIAOMI TECHNOLOGY UK LIMITED,<br><br>Defendants. | ) | Case No. 2:26-cv-<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Truesight Communications LLC ("Truesight" or "Plaintiff") for its Complaint against Defendants Xiaomi Corporation ("Xiaomi Corp."), Xiaomi H.K. Ltd. ("Xiaomi H.K."), Xiaomi Communications, Co., Ltd. ("Xiaomi Communications"), Xiaomi Inc., Xiaomi Technology Netherlands B.V. ("Xiaomi Netherlands"), and Xiaomi Technology UK Limited ("Xiaomi UK") (collectively, "Xiaomi" or "Defendants") for patent infringement alleges as follows:

## THE PARTIES

1. Truesight is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 209 East Austin Street, Marshall, TX 75670.

2. On information and belief, Defendant Xiaomi Corp. is a corporation organized and existing under the laws of the Cayman Islands, with a place of business at Maples Corporate

Services Limited, P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. On information and belief, Xiaomi Corp. may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi Corp. does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

3. On information and belief, Defendant Xiaomi Communications is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Xiaomi Office Building, 68 Qinghe Middle Street, Haidian District, Beijing, China 100085. On information and belief, Xiaomi Communications may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi Communications does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

4. On information and belief, Xiaomi H.K. is a corporation organized and existing under the laws of Hong Kong, with its principal place of business at Unit 806, Tower 2 8/F, Cheung Sha Wan Plaza, 833 Cheung Sha Wan Road, Kowloon City, Hong Kong SAR, China. On information and belief, Xiaomi H.K. may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi H.K. does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

5. On information and belief, Xiaomi, Inc. is a corporation organized under the laws of People's Republic of China, with its principal place of business at Xiaomi Office Building, 68 Qinghe Middle Street, Haidian District, Beijing, China 100085. On information and belief, Xiaomi Inc. may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi Inc. does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

6. On information and belief, Xiaomi Netherlands is a corporation organized under the laws of the Netherlands, with its principal place of business at Prinses Beatrixlaan 582, WTC The Hague, Toren E 5e etage, 2595BM s-Gravenhage. On information and belief, Xiaomi Netherlands may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi Netherlands does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

7. On information and belief, Xiaomi UK is a corporation organized under the laws of England and Wales, with its principal place of business at Us & Co Stratford, Floor BR40-11-12-13-14, 11 Burford Road, London, England E15 2ST. On information and belief, Xiaomi UK may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi UK does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

8. Defendants have authorized sellers and sales representatives that offer and sell products pertinent to this Complaint through the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, such as: Best Buy, 422 West TX-281 Loop, Suite 100, Longview, Texas 75605; and Walmart, 1701 East End Boulevard North, Marshall, Texas 75670; 515 East Loop 281, Longview, Texas 75605; and 4006 Estes Parkway, Longview, Texas 75603.

9. Defendants design, manufacture, make, use, sell, and/or import into the United States watches with electronic display and fitness tracking capabilities. Defendants' watches and fitness tracking devices are marketed, used, offered for sale, and/or sold throughout the United States, including within this District.

## JURISDICTION AND VENUE

10. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

11. This Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. On information and belief, Defendants have sufficient minimum contacts with the forum because Defendants transact substantial business in the State of Texas and in this Judicial District. Further, Defendants have, directly or through subsidiaries or intermediaries, committed and continue to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, alleged more particularly below. Furthermore, Defendants have purposefully availed themselves of the privileges of conducting business in the State of Texas and in this District; Defendants have sought protection and benefit from the laws of the State of Texas; and Plaintiff's causes of action arise directly from Defendants' business contacts and other activities in the State of Texas and in this District.

12. Defendants are subject to this Court's specific and general personal jurisdiction due at least to their substantial business in this forum, including (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

13. Specifically, Defendants intend to do and do business in, and have committed acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, and offer and send their products or services, including those accused of

infringement here, to customers and potential customers located in this State, including in this District, and in the United States.

14. On information and belief, Defendants also make their products available for sale in this District at least through third-party sellers, such as Walmart and Amazon.[1]

15. Defendants have committed acts of infringement in this District, including, but not limited to, making, using, selling, offering for sale, and importing of the Accused Products.

16. Defendants have purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendants regularly sell (either directly or indirectly), their products within this District. For example, Defendants have placed infringing products into the stream of commerce via established distribution channels with the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas. For example, Defendants make their products available in stores, as discussed above (*see* ¶ 14), either directly or indirectly, as well as on the internet through online storefronts, such as Amazon.com. Listings for Defendants' products on Amazon.com link directly to Defendants' official Amazon storefront.[2]

17. Defendants have also been named as respondents in investigations before the International Trade Commission for violations of section 337 of the Tariff Act of 1930, as

[1] https://www.walmart.com/browse/0?facet=brand:Xiaomi.

[2] https://www.amazon.com/Xiaomi-Smart-Band-Global-Version/dp/B0CD2MP728/ref=sr_1_1?crid=KSL2ZVFSR6XR&dib=eyJ2IjoiMSJ9.3s2i7FhF5WaQP3LLqGjT-OJ-n7MV35k_N0uir08uTJy_vskaFA6te5Y1zu9FqvBKKh3PUf_qRP2ynDpuEw58myM5yLVrj3HxSexH3IaAeDG1g2SN76SfUHtAY26XfsDF0pgnC2xR8Xp1_Ba1qj5Dsmg-f-VESJnL5-BD67NVEMlYDtgzxQ5Cf8N2gYbFbiGTKKAn2FxXYnQkj7IsV9D0KWbXKzW6joj2YXgrKZ9v9kA.w4xC_vS9iE8wJmb7Uzg10zhjfKG3ix17mrK7NPaaPBA&dib_tag=se&keywords=xiaomi+smart+band+8&qid=1773243358&sprefix=Xiaomi+Smart+Band+8%2Caps%2C118&sr=8-1.

amended, 19 U.S.C. 1337, demonstrating Defendants' knowing importation of goods into the United States.[3]

18. By way of further example, in the past, certain Defendants have not formally contested jurisdiction and venue in this Court. *See, e.g., The Research Foundation for The State University of New York, et al. v. Xiaomi Corporation, et al.*, Case No. 2:23-cv-00353-RWS-RSP, Dkt. 16 (E.D. Tex. Feb. 1, 2024).

19. In addition, or in the alternative, this Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal patent law, Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendants is consistent with the United States Constitution.

20. Defendants are subject to this Court's specific and/or general jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to their substantial and pervasive business in this State and Judicial District, including their infringing activities alleged herein, from which Defendants have derived substantial revenue from goods sold to Texas residents and consumers.

21. Venue is proper against Defendants in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendants are not residents of the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3). *See also In re: HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

**PATENTS-IN-SUIT**

22. On February 3, 2015, the United States Patent and Trademark Office duly and

[3] https://public-inspection.federalregister.gov/2023-14840.pdf?1689165922.

legally issued U.S. Patent No. 8,949,879 (the "'879 Patent") entitled "Access Controls for Known Content." A true and correct copy of the '879 Patent is available at: https://patentimages.storage.googleapis.com/cf/7c/9f/1a370fc15f9104/US8949879.pdf.

23. On November 25, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,898,803 (the "'803 Patent") entitled "Content and Identity Delivery System for Portable Playback of Content and Streaming Service Integration". A true and correct copy of the '803 Patent is available at: https://patentimages.storage.googleapis.com/f4/3a/65/e122d49133de59/US8898803.pdf.

24. On March 14, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,595,300 (the "'300 Patent") entitled "Contextual Chapter Navigation." A true and correct copy of the '300 Patent is available at: https://patentimages.storage.googleapis.com/b2/e4/a7/76a598cb2aed44/US9595300.pdf.

25. On June 3, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,745,749 (the "'749 Patent") entitled "Virtual Secure Digital Card." A true and correct copy of the '749 Patent is available at: https://patentimages.storage.googleapis.com/64/49/99/11947952f342e0/US8745749.pdf.

26. Truesight is the sole and exclusive owner of all right, title, and interest in the'879 Patent, the '803 Patent, the '300 Patent, and the '749 Patent, (collectively, the "Patents-in-Suit"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Truesight also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

27. The Patents-in-Suit generally relate to methods and apparatuses related to storage and display of digital media.

28. The ’879 Patent relates to technology involving personalized access controls associated with digital media in a digital library by creating policy decisions regarding use of the asset based on these settings. The access controls can be implemented on an individual or on a group basis. The technology described in the ’879 Patent was developed by Joseph Zipperer, Steven King, and Valiant Seu. For example, the technology is implemented in infringing Xiaomi smartphones and tablets, including, but not limited to, the Xiaomi 17, using software and/or applications, such as Google Family Link, to put content restrictions on certain media, such as television shows and movies. Infringing products include, but are not limited to, Xiaomi/Redmi-branded smartphones and tablets, including, but not limited to, the Xiaomi Mi 9, Xiaomi Mi 9T Pro, Xiaomi Mi Note 10, Xiaomi Mi Note 10 Pro, Redmi 8A, Xiaomi Mi 10, Xiaomi Mi 10 Pro, Xiaomi Mi 10 Lite 5G, Xiaomi Mi 10 Ultra, Xiaomi Mi 10T, Xiaomi Mi 10T Pro, Xiaomi Mi 10T Lite, Redmi 9, Redmi Note 9, Redmi Note 9S, Redmi Note 9 Pro, Redmi K30 Pro, POCO F2 Pro, POCO X3, POCO X3 NFC, Xiaomi Mi 11, Xiaomi Mi 11 Ultra, Xiaomi Mi 11i, Xiaomi 11T, Redmi Note 9T, Redmi Note 10, Redmi Note 10S, Redmi Note 10 Pro, Redmi Note 10T 5G, POCO M3, POCO M3 Pro 5G, POCO X3 Pro, POCO F3, Xiaomi 12, Xiaomi 12 Pro, Xiaomi 12T Pro, Xiaomi 12S, Xiaomi 12S Pro, Xiaomi 12S Ultra, Redmi 10 5G, Redmi Note 11 Pro 4G, Redmi Note 11 Pro 5G, Redmi K50 Gaming, POCO M4 5G, POCO F4, POCO F4 GT, Xiaomi 13, Xiaomi 13 Pro, Xiaomi 13 Ultra, Redmi Note 12 Pro 5G, Redmi Note 12S, Redmi Note 12 Turbo, POCO X5 Pro 5G, POCO F5, POCO F5 Pro, Xiaomi 14, Xiaomi 14T, Xiaomi 14T Pro, Redmi 13, Redmi 14C, Redmi Note 13, Redmi Note 13 Pro 5G, Redmi Note 13 Pro+ 5G, POCO

F6 Pro, Xiaomi 15, Xiaomi 15T, Xiaomi 15T Pro, Redmi A5, Redmi 15, Redmi 15 5G, Redmi Note 14 4G, Redmi Note 14 5G, Redmi Note 14S, Redmi Note 14 Pro 5G, Redmi Note 14 Pro+ 5G, POCO C71, POCO C75, POCO M7 Pro 5G, POCO X7, POCO X7 Pro, POCO F7, POCO F7 Pro, POCO F7 Ultra, Xiaomi 17 Ultra, Xiaomi 17T, Xiaomi 17T Pro, Redmi A7 Pro, Redmi Note 15 4G, Redmi Note 15 5G, Redmi Note 15 Pro 4G, Redmi Note 15 Pro 5G, Redmi Note 15 Pro+ 5G, POCO C81 Pro, POCO M8 5G, POCO X8 Pro, POCO X8 Pro Max, POCO F8 Pro, POCO F8 Ultra, Xiaomi Pad 5, Xiaomi Pad 5 Pro, Xiaomi Pad 5 Pro 5G, Redmi Pad, Xiaomi Pad 6, Redmi Pad SE, Redmi Pad Pro, Redmi Pad SE 8.7, Redmi Pad SE 8.7 4G, POCO Pad, Xiaomi Pad 7, Xiaomi Pad 7 Pro, Xiaomi Pad Mini, Xiaomi Pad 8, Xiaomi Pad 8 Pro, Redmi Pad 2, Redmi Pad 2 4G, Redmi Pad 2 Pro, Redmi Pad 2 Pro 5G, POCO Pad X1, and POCO Pad M1, among other Xiaomi products (collectively, the "Accused Products").

29. The '803 Patent relates to technology for downloading streamed digital media from a device to a media storage system for when the device is not connected to a network. The technology described in the '803 Patent was developed by David W. Hostetter and Joseph P. Zipperer. For example, the technology is implemented in Xiaomi smartphones and other mobile devices including, but not limited to, the Xiaomi 17, when videos are downloaded to the device's virtual and/or flash memory, such as an SD card or equivalent internal storage.

30. The '300 Patent relates to technology for systems and methods for chapter navigation of video playbacks along a timeline of the video. The technology described in the '300 Patent was developed by Todd E. Duffin, Todd R. Malsbary, and Mark E. Phillips. For example, the technology is implemented in Xiaomi smartphones and tablets, including, but not limited to, the Xiaomi 17, which stream videos that allow for chapter navigation and selection within the video, including, but not limited to, the Xiaomi 17.

31. The ’749 Patent relates to technology for systems and methods for generating virtual memory. The technology was developed by Joseph P. Zipperer and John Calixto. For example, the technology is implemented in Xiaomi smartphones and other mobile devices through Xiaomi memory modules, including, but not limited to, the UFS 4.1 Memory module.

32. Xiaomi has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited, to smartphones and tablets.

**COUNT I**
**(Infringement of the ’879 Patent)**

33. Paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

34. Truesight has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’879 Patent.

35. Defendants have and continue to directly infringe the ’879 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’879 Patent. Such infringing products include Xiaomi smartphones and tablets, including, but not limited to, the Xiaomi 17, among other Xiaomi products.

36. For example, Defendants have and continue to directly infringe at least Claim 4 of the ’879 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include Xiaomi smartphones and tablets, including, but not limited to, the Xiaomi 17, among other Xiaomi Products, through the implementation of content restrictions, such as those through Google Family Link and other parental controls. The Xiaomi 17 is exemplary of how the Accused Products infringe the ’879 Patent.

37. The Xiaomi 17, through the use of Google Family Link, performs a method in a computing system for creating specific rating policies for digital media access, the method comprising: under control of the computing system having a memory and a processor. For example, the Google family link allows users to set ratings (e.g., Teen, PG-13, PG-14) for known digital content (e.g., Apps, Games, Movies, TV) to be played back on a video playback device having a V-chip or the equivalent thereof.

38. The Xiaomi 17, through the use of Google Family Link, performs a step of retrieving media information from the memory comprising a rating based media access policy for a digital content; displaying the rating based media access policy to a user. For example, the Google Family Link comprises a rating policy management module (e.g., Content Restrictions) for selectively setting rating based access control on a per media (e.g., Apps, Games, Movies, TV, books) and per user basis for digital content of a digital library (e.g., Google Play library) thereby displaying the rating based media access policy to a user (e.g., a parent).

39. The Xiaomi 17, through the use of Google Family Link, performs a step of receiving from the user a first rating based access control policy override action for a first viewer and a second, different, rating based access control policy override action for a second viewer with respect to a same specific digital content. For example, Google Family Link performs the step of receiving from the user (e.g., a parent) a first rating based access control policy (e.g., PG-13 Movies for a 14-year-old) override action for a first viewer and a second, different, rating based access control policy override (e.g., G Movies for a 7-year-old) action for a second viewer with respect to a same specific digital content (e.g., a PG-13 rated movie).

40. The Xiaomi 17, through the use of Google Family Link, performs a step wherein the first viewer and second viewer are separate and distinct from the user from which the override

actions are received, and wherein the first viewer is associated with a first authentication code unique to the first viewer and the second viewer is associated with a second authentication code unique to the second viewer. For example, a first user (e.g., a 14-year-old) and a second user (e.g., a 7-year-old) are separate and distinct from the user (e.g., a parent) from which the override actions are received, and wherein the first viewer is associated with a first authentication code unique to the first viewer (e.g. the 14-year-old's login) and the second viewer is associated with a second authentication code unique to the second viewer (e.g., the 7-year-old's login);

41. The Xiaomi 17, through the use of applications such as Google Family Link, performs a step of storing the first and second policy override actions in a rating policy repository wherein future playback of the digital content is allowed or blocked consistent with the stored policy override action. For example, Google Family Link stores the first policy override action (e.g., access to PG-13 movies for a 14-year-old) and second policy override actions (e.g., no access to PG-13 movies for a 7-year-old) in a rating policy repository wherein future playback of the digital content (e.g., a PG-13 rated movie) is allowed or blocked consistent with the stored policy override action.

42. The Xiaomi 17, through the use of applications such as Google Family Link, performs a step wherein the first viewer is allowed to access the specific digital content based upon the first authentication code and the second viewer is blocked from access to the specific digital content based upon the second authentication code, wherein the first authentication code comprises a personal identification number (PIN). For example, the first user (e.g., a 14-year-old) is required to use their Google login to see available content (e.g., a PG-13 movie), while the second viewer (e.g., a 7-year-old) is blocked from accessing the specific digital content based upon the authentication code (e.g., the 7-year-old's login), wherein the first authentication code comprises

a personal identification number (PIN).

43. The Xiaomi 17, through the use of applications such as Google Family Link, performs a step wherein the first of the two users is allowed to access the specific digital content in response to determining that a content identifier of the specific digital content matches a user identifier of the first user and the personal identification number of the first user is successfully authenticated. For example, the first of the two users (e.g., a 14-year-old) is allowed to access the specific digital content (e.g., a PG-13 movie) in response to determining that a content identifier of the specific digital content identifier (e.g., Family Link inclusion of a PG-13 or lower movie) matches a user identifier of the first user (e.g., a 14-year-old's username) and the personal identification number of the first user is successfully authenticated (e.g., a 14-year-old's successful login with password).

44. On information and belief, Defendants' direct infringement of the '879 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products.

45. Defendants have and continue to indirectly infringe one or more claims of the '879 Patent by knowingly and intentionally inducing others, including Xiaomi's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

46. Defendants, with knowledge that these products, or the use thereof, infringe the '879 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '879 Patent by

providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the '879 Patent at least as early as the issuance of the '879 Patent.

47. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '879 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications. For example, Xiaomi makes available to their customers and end-users various materials that instruct them on how to use Xiaomi products in an infringing manner based on the product, such as user manuals.[4]

48. On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '879 Patent. Defendants perform these affirmative acts with knowledge of the '879 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '879 Patent.

---

[4] *See, e.g.*, https://www.mi.com/global/support/.

49. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the ’879 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants’ affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others’ use and manufacture of the Accused Products such that the ’879 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the ’879 Patent, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the ’879 Patent. Defendants perform these affirmative acts with knowledge of the ’879 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’879 Patent.

50. Truesight has suffered damages as a result of Defendants’ direct and indirect infringement of the ’879 Patent in an amount to be proven at trial.

51. Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendants’ infringement of the ’879 Patent, for which there is no adequate remedy at law, unless Defendants’ infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the ’803 Patent)**

52. Paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

53. Truesight has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’803 Patent.

54. Defendants have and continue to directly infringe the ’803 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each

and every limitation of one or more claims of the ’803 Patent. Such products include smartphones and tablets, such as the Xiaomi 17 preloaded with streaming applications, such as the Netflix Mobile Application[5], among other Xiaomi products.

55. For example, Defendants have and continue to directly infringe at least Claim 1 of the ’803 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartphones and tablets, such as the Xiaomi 17 preloaded with the Netflix Mobile Application, among other Xiaomi products. The Xiaomi 17 is exemplary of how the Accused Products infringe the ’803 Patent.

56. The Xiaomi 17, integrated with the Netflix Mobile Application, performs a method of delivering content by integrating a kiosk delivery system with a streaming service (e.g., Netflix). The Xiaomi 17, integrated with the Netflix Mobile Application, performs a step of transferring content from a kiosk to a flash memory media device, wherein the flash memory media device is configured to be connected to a playback device. For example, the streaming content from Netflix can be downloaded and saved on the smartphone’s SD card or equivalent internal storage.

57. The Xiaomi 17, integrated with the Netflix Mobile Application, performs a step of transferring user service information, including user account information for one or more account based digital content streaming services, from the kiosk to the flash memory media device. For example, Netflix stores user credentials information such as username and password on the user device memory. This memory can be the internal or external memory of the device.

58. The Xiaomi 17, integrated with the Netflix Mobile Application, performs a step

---

[5] One information and belief, the Accused Products, including the Xiaomi 17, come preloaded with the Netflix Mobile Application and/or other streaming applications, either in its entirety or as a stub. On further information and belief, Xiaomi promotes the sale of the Accused Products with the use of various streaming services.

wherein, responsive to the flash memory media device being connected to the playback device: if the playback device is connected to a network via a network connection having a speed that meets a threshold for streaming digital content, the transferred user service information from the connected flash memory media device is used to access at least one of the one or more account based digital streaming services to stream a higher quality version of the content to the connected playback device for playback, wherein the higher quality version of the content is a high definition version of standard definition content transferred from the kiosk to the flash memory media device. For example, Contents can be downloaded from Netflix and stored in SD cards or equivalent internal storage and can be viewed later, even in the absence of a network (internet). Netflix accesses stored user information such as username and password to streamline online content at an HD quality when the device is connected to the internet and has an internet connection speed of 3Mbps (e.g., threshold) and above:

To get the best video quality when watching TV shows, movies, or live events on Netflix, we recommend having a stable internet connection speed (as shown in the table below).

| Video quality | Resolution | Recommended speed |
|---|---|---|
| High definition (HD) | 720p | 3 Mbps or higher |
| Full high definition (FHD) | 1080p | 5 Mbps or higher |
| Ultra high definition (UHD) | 4K | 15 Mbps or higher |

[6]

59. The Xiaomi 17, integrated with the Netflix Mobile Application, performs a step wherein, responsive to the flash memory media device being connected to the playback device: otherwise, the content stored on the connected flash memory media device is used for playback of the content. For example, Netflix allows the user to watch movies downloaded on the device SD

[6] *See* https://help.netflix.com/en/node/306.

memory card or equivalent internal storage when there is no internet connection:

# How to download titles to watch offline

You can watch TV shows and movies offline at any time by downloading them from the Netflix app. Learn more about finding, downloading, and watching downloaded TV shows and movies below.

To download TV shows or movies you'll need one of these devices with the latest version of the Netflix app installed:

- Android phone or tablet
- iPhone or iPad
- Amazon Fire tablet
- Google Chromebook (with Google Play Store installed)

> **NOTE:** Some older operating system versions for these devices may not support downloads. Make sure your device has the latest updates installed.

**Find a TV show or movie**

Find a TV show or movie and look for the **Downloads** icon ⤓, or filter by what is available for download.

> **NOTE:** Not all TV shows and movies are available for download. To learn why, go to this article with more information.

**Download a TV show or movie**

1. Open the Netflix app.
2. Browse all TV shows and movies available for download:
   - iPhone, iPad, Android, or Fire devices: Tap **Downloads** ⤓ > **See What You Can Download**
   - Chromebook: Click **Downloads** > **Find More to Download**
3. Select a TV show or movie you want to download onto your device.
   - For movies, select **Download** ⤓.
   - For TV shows, select the download button ⤓ next to an episode or tap the **Download Season** ⤓ to download all episodes of a season.

To save on data usage, we recommend being connected to Wi-Fi while downloading.

Ad-free plans can have up to 100 active downloads at a time per device based on the number of devices included in your Netflix plan.

Ad-supported plans are limited to 15 total downloads per device per calendar month.

If you cancel your account, downloads on your device will be deleted. If you restart your membership, you'll need to download them again.

**Watch downloaded TV shows and movies**

To access and watch the downloads offline, follow the steps below.

1. Open the Netflix app.
2. Tap **Downloads** ⤓.
3. Find the download you want to watch, then select **Play** ⊙.

> **NOTE:** You need to stay signed in to your Netflix account to access the downloads offline. If you're using a Kids profile, downloaded TV shows and movies with higher maturity ratings may not be available to watch offline.

[7]

60. On information and belief, Defendants' direct infringement of the '803 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products.

---

[7] *See* https://help.netflix.com/en/node/54816.

61. Defendants have and continue to indirectly infringe one or more claims of the ’803 Patent by knowingly and intentionally inducing others, including Xiaomi’s customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

62. Defendants, with knowledge that these products, or the use thereof, infringe the ’803 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the ’803 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants’ specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the ’803 Patent at least as early as the issuance of the ’803 Patent.

63. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ’803 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants’ website, product literature and packaging, and other publications. For example, Xiaomi makes available to their customers and end-users various materials that instruct them on how to use Xiaomi products in an infringing manner based on the product, such as user

manuals.[8]

64. On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '803 Patent. Defendants perform these affirmative acts with knowledge of the '803 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '803 Patent.

65. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '803 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '803 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '803 Patent, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '803 Patent. Defendants perform these affirmative acts with knowledge of the '803 Patent and with intent, or willful blindness, that they cause the direct infringement of the '803 Patent.

66. Truesight has suffered damages as a result of Defendants' direct and indirect infringement of the '803 Patent in an amount to be proven at trial.

67. Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '803 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

[8] *See, e.g.*, https://www.mi.com/global/support/.

**COUNT III**
**(Infringement of the ’300 Patent)**

68. Paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

69. Truesight has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’300 Patent.

70. Defendants have and continue to directly infringe the ’300 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’300 Patent. Such products include smartphones and tablets, including, but not limited to, the Xiaomi 17, among other Xiaomi products.

71. For example, Defendants have and continue to directly infringe at least Claim 1 of the ’300 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartphones and tablets, including, but not limited to, the Xiaomi 17, which includes the YouTube Mobile Application as part of the Google Mobile Services (“GMS”)[9], among other Xiaomi products.

72. The Xiaomi 17, through the YouTube Mobile Application, performs a method for navigating a plurality of chapters of video content within a video. YouTube openly promotes its chapter navigation functionality and offers advice to users on how to incorporate said functionality in their videos. YouTube also added the chapter navigation functionality to its Mobile Application, which comes pre-downloaded on most Android phones.

73. The Xiaomi 17, through the YouTube Mobile Application, performs a method of reading from a metadata file stored with the video chapter start times, and location on a secure

[9] *See* https://www.android.com/gms/.

digital card (SD card) of chapter preview images that correspond to the playable content as initially configured and stored on the secure digital card, each chapter comprising a segment of content of the video. For example, when a user selects to watch certain YouTube videos on the Android app, users will have access to a chapter navigation functionality. The entirety of the YouTube video will be broken up into several chapters, each with a title and a preview image. The chapters will be displayed on the video timeline, in a list format, and in sequence with preview images of each chapter and the time corresponding to each chapter:





[10]

74. The Xiaomi 17, through the YouTube Mobile Application, performs a method of presenting, during continuous playback of a video, an on-screen display to a user, the on-screen display including a timeline having a demarcation for the beginning of each of the plurality of chapters of the video and having a marker corresponding to a current position in the video playback, the timeline assembled from the chapter titles, the chapter start times, and the location on the secure digital card of chapter preview images that correspond to the playable content stored as part of the metadata, and the on-screen display including one image for each of the plurality of

[10] *See* https://www.youtube.com/watch?v=Sri2Y2sToPY, viewed on an Android device.

chapters from the chapter preview images displayed in sequential order parallel to the timeline, wherein a focus identifier marks an image of a chapter corresponding to the current position within the continuous video playback. For example, during continuous playback of a video on the YouTube Mobile Application, a user can access several on-screen displays of the video's timeline. A first timeline is displayed as a red-and-gray bar at the bottom of the video, which displays the timeline of the entire video in sections. The red portions of the bar designate portions of the video that have already played, while the gray sections indicate sections of the video that have yet to play but have buffered. At least two other timelines are viewable in the video's description. A second timeline has a preview image for each chapter, along with the chapter's start time and its name. When the video is playing a particular chapter, the section of this timeline with the corresponding chapter preview image will be highlighted in a light-gray color. The focus identifier (e.g., a small, red dot on the video bar) is located in the corresponding chapter currently playing while the preview image in the video's description is highlighted. A third timeline – also available in the video's description – is a vertical list of the chapters' start times and names.

75. The Xiaomi 17, through the YouTube Mobile Application, performs a method of receiving a selection of one of the chapter preview images as chapter skip input during the continuous playback of the video. For example, during continuous playback of a video on YouTube's Mobile Application, a user can skip forward or backward in the video by selecting a chapter in one of the video timelines that has corresponding chapter preview images (e.g., skipping from Chapter "Sunrise" to Chapter "The Same Test From A Different Angle", as shown below):



[11]

76. The Xiaomi 17, through the YouTube Mobile Application, performs a method of moving the at least one image from each chapter one position along the line with respect to the focus identifier, according to the chapter skip input, wherein the one image is moved to the left when the chapter skip input indicates a skip forward and wherein the one image is moved to the right when the chapter skip input indicates a skip backward. For example, a user on the YouTube Mobile Application can select to skip forward or backward in a video by clicking on one of the preview images in the chapter timeline, where the preview image corresponds to the chapter to which the user is skipping. If the user clicks on an image to the right of the chapter currently playing on the chapter timeline, the video skips forward. Alternatively, if the user clicks on an

[11] *See* https://www.youtube.com/watch?v=Sri2Y2sToPY, viewed on an Android device.

image to the left of the image of the chapter currently playing on the chapter timeline, the video skips backwards. The focus identifier (e.g., the red dot on the video playback in the figure above) moves accordingly. In response to skipping forward in the video, the selected video chapter preview image is oriented in the center of the chapter timeline and is highlighted in a light-gray color:





[12]

77. The Xiaomi 17, through the YouTube Mobile Application, performs a method of skipping playback of the video to a chapter identified by the focus identifier such that the video playback continues from the position of the chapter identified by the focus identifier. For example, a user using the YouTube Mobile Application can also skip chapters by moving the focus identifier (e.g., the red dot on the video playback) to the right or to the left (e.g., forward or backward in the video, respectively). The focus identifier's position corresponds to the chapter currently playing in the video.

[12] *See* https://www.youtube.com/watch?v=Sri2Y2sToPY, viewed on an Android device.

78. On information and belief, Defendants' direct infringement of the '300 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products.

79. Defendants have and continue to indirectly infringe one or more claims of the '300 Patent by knowingly and intentionally inducing others, including Xiaomi's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

80. Defendants, with knowledge that these products, or the use thereof, infringe the '300 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '300 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the '300 Patent at least as early as the issuance of the '300 Patent.

81. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '300 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in

an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications. For example, Xiaomi makes available to their customers and end-users various materials that instruct them on how to use Xiaomi products in an infringing manner based on the product, such as user manuals.[13]

82. On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '300 Patent. Defendants perform these affirmative acts with knowledge of the '300 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '300 Patent.

83. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '300 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '300 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '300 Patent, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '300 Patent. Defendants perform these affirmative acts with knowledge of the '300 Patent and with intent, or willful blindness, that they cause the direct infringement of the '300 Patent.

84. Truesight has suffered damages as a result of Defendants' direct and indirect

---

[13] *See, e.g.*, https://www.mi.com/global/support/.

infringement of the ’300 Patent in an amount to be proven at trial.

85. Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendants’ infringement of the ’300 Patent, for which there is no adequate remedy at law, unless Defendants’ infringement is enjoined by this Court.

**COUNT IV**
**(Infringement of the ’749 Patent)**

86. Paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

87. Truesight has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’749 Patent.

88. Defendants have and continue to directly infringe the ’749 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’749 Patent. Such products include smartphones and tablets, including, but not limited to, the Xiaomi 17, among other Xiaomi products.

89. For example, Defendants have and continue to directly infringe at least Claim 1 of the ’749 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartphones and tablets, including, but not limited to, the Xiaomi 17, among other Xiaomi products. The Xiaomi 17 is exemplary of how the Accused Products infringe the ’749 Patent.

90. The Xiaomi 17, equipped with a UFS 4.1 Memory module, performs a method for generating a virtual secure digital (SD card).

| | |
|---|---|
| **Storage & RAM** | 12GB + 256GB \| 12GB + 512GB<br>RAM: LPDDR5X<br>Storage: UFS 4.1<br>*Available RAM and storage are less than the total memory due to storage of operating system and software pre-installed on the device. |

[14]

91. The Xiaomi 17, equipped with a UFS 4.1 Memory module, performs a step of reading a media key block and media identification for an SD card. For example, during configuration of secure storage, media keys and media identification are loaded and read. By way of further example, when a video is loaded into memory on a Xiaomi device, a Digital Rights Management ("DRM") module loads and reads media keys as well as media identification and metadata related to DRM.

92. The Xiaomi 17, equipped with a UFS 4.1 Memory module, performs a step of storing the media key block and the media identification. For example, prior to playback, the Xiaomi 17 stores media key blocks and media identification. This information can be stored on the UFS 4.1 Memory module.

93. The Xiaomi 17, equipped with a UFS 4.1 Memory module, performs a step of creating a file system for secure data on a storage device for storage of secure data corresponding to a secure data area of the SD card. For example, the Xiaomi 17 creates file systems for secure storage (e.g., a "Secure File System") on a storage device (e.g., on eMMC and/or UFS memory). This file system (e.g., a portion of the RPMB partition) corresponds to the secure area of an SD card.

94. The Xiaomi 17, equipped with a UFS 4.1 Memory module, performs a step of creating a file system for user data on the storage device for storage of user data corresponding to

[14] *See* https://www.mi.com/global/product/xiaomi-17/specs/.

a user data area of the SD card, wherein a size of the file system for secure data is determinant on a size of the file system for user data, the determination based on a lookup table providing a relationship between the sizes. For example, the Xiaomi 17 creates file systems for user data (e.g. the media itself such as encrypted DRM protected media). This information is stored along with user data on the storage of the eMMC / UFS storage. By way of further example, the Android Trusty TEE Secure File system utilized by Xiaomi 17 includes the capability to create superblocks, which can dynamically grow the size of the secure file system based on the size of the unsecured user content.

95. On information and belief, Defendants' direct infringement of the '749 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products.

96. Defendants have and continue to indirectly infringe one or more claims of the '749 Patent by knowingly and intentionally inducing others, including Xiaomi's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

97. Defendants, with knowledge that these products, or the use thereof, infringe the '749 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '749 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including

specifically those related to Defendants' specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the '749 Patent at least as early as the issuance of the '749 Patent.

98. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '749 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications. For example, Xiaomi makes available to their customers and end-users various materials that instruct them on how to use Xiaomi products in an infringing manner based on the product, such as user manuals.[15]

99. On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '749 Patent. Defendants perform these affirmative acts with knowledge of the '749 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '749 Patent.

100. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '749 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District

[15] *See, e.g.*, https://www.mi.com/global/support/.

and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '749 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '749 Patent, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '749 Patent. Defendants perform these affirmative acts with knowledge of the '749 Patent and with intent, or willful blindness, that they cause the direct infringement of the '749 Patent.

101. Truesight has suffered damages as a result of Defendants' direct and indirect infringement of the '749 Patent in an amount to be proven at trial.

102. Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '749 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Truesight prays for relief against Defendants as follows:

a. Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c. An order awarding damages sufficient to compensate Plaintiff for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with

interest and costs;

d. Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e. Such other and further relief as the Court deems just and proper.

Dated: November 6, 2026

Respectfully submitted,

*/s/ Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@frlip.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@frlip.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@frlip.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
1200 Harbor Blvd., 10th Floor
Weehawken Township, NJ 07086
Telephone: (201) 817-1840
Facsimile: (973) 535-0921

***ATTORNEYS FOR PLAINTIFF,***
***TRUESIGHT COMMUNICATIONS LLC***